USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/6/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EMIL SHASHA, TRUSTEE FOR THE VIOLET :   14-cv-9989 (AT) (RWL)
SHUKER SHASHA LIVING TRUST, et al., :
                                              :   **MEMORANDUM AND**
                    Plaintiffs, :   **ORDER DENYING STAY**
                                              :
             - against -                   :
                                              :
PETER L. MALKIN, et al.,                  :
                                              :
                    Defendants. :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      This case has been stayed pending the outcome of an arbitration (the "Arbitration"). The Arbitration recently completed extensive hearings over two years. Plaintiffs – some of who are counterclaim-respondents in the Arbitration – now move to stay the Arbitration from further consideration of the remaining counterclaim. For the reasons set forth below, Plaintiffs' request for a stay is DENIED.

Background

      Familiarity with the facts of this case from earlier decisions is presumed. For present purposes, the following background is relevant.

      This action arises out of the consolidation of multiple properties, including the Empire State Building, into a real estate investment trust called the Empire State Realty Trust, Inc.[1] Empire State Realty Trust had its initial public offering on October 1, 2013, and is publicly traded on the New York Stock Exchange.[2] On October 14, 2014, Plaintiff

---

[1] Amended Complaint ("Am. Compl.") ¶ 1.

[2] Am. Compl. ¶¶ 48, 76.

1

Howard Edelman "in his capacity as Trustee" of the Edelman Family Decedent's Trust and certain other parties who invested in the Empire State Realty Trust commenced the Arbitration before the American Arbitration Association (the "AAA") in New York City against several defendants collectively referred to herein as the Malkin parties.[3] Plaintiffs' claims in the Arbitration include violations of securities laws, common law fraud and misrepresentation, breach of fiduciary duty, and breach of contract.[4]

On December 18, 2014, Howard Edelman, as trustee of the Edelman Trust, and other claimants from the Arbitration filed the present action asserting the same claims against the same Malkin parties who are respondents in the Arbitration. Plaintiffs did so to toll the statute of limitations in the event that certain claims in the Arbitration were determined to be non-arbitrable.[5] At the request of the parties, this action was stayed pending determination of the Arbitration.[6]

In response to the Arbitration claims against them, the Malkin parties asserted several counterclaims. The only surviving counterclaim at this juncture is a defamation claim asserted against "Howard Edelman, as trustee" of the Edelman Trust, based on statements made by Richard Edelman, a beneficiary of the Edelman Trust (the

---

[3] Conformed Statement of Claim and Demand for Arbitration, *Emil Shasha, Trustee, Violet Shuker Shasha Living Trust v. Peter L. Malkin*, AAA No. 01-14-0001-6986, ¶¶ 1-2, 11 (Oct. 14, 2014) ("Arbitration Statement"). According to Defendants, the twelve plaintiffs in the Arbitration were the only investors among thousands who opted out of a class action settlement in New York State court resulting from a challenge to the initial public offering of the Empire Real Estate Trust. (Opposition to Motion to Stay the Arbitration Counterclaim ("Def. Mem.") at 3.)

[4] Arbitration Statement ¶¶ 85-114.

[5] Am. Compl. ¶ 3.

[6] Order dated March 12, 2015.

"Counterclaim").[7] The arbitrators earlier dismissed a direct counterclaim for defamation against Richard Edelman as not arbitrable for the reason that "the counterclaims arising out of Richard Edelman's alleged defamatory statements . . . 'do not aris[e] out of or regard[s] th[e] [Participation] agreement or The Property.'"[8] On March 21, 2016, the Arbitration claimants moved to dismiss the Counterclaim against trustee Howard Edelman, arguing, among other reasons, that it too was outside the scope of the parties' arbitration agreement.[9] The Arbitrators denied that motion a month later.[10]

Howard Edelman died on September 18, 2017.[11] A few days later, counsel for the Arbitration claimants notified the arbitrators of Howard Edelman's death by email, and, on October 30, 2017, counsel filed a formal "Suggestion of Death Upon the Record" naming Robert Paul Edelman as the successor trustee of the Edelman Trust.[12] Also on October 30, 2017, Plaintiffs filed a motion to dismiss the Counterclaim based on the death of

---

[7] Declaration of John Wyeth Griggs dated July 9, 2018 ("Griggs Decl."), ¶ 24; Counterclaims, attached as Ex. 1 to Griggs Decl., ¶¶ 1, 96-106 (arbitration counterclaims naming, among others, "Howard Edelman, as trustee").

[8] Arbitrators' Memorandum, attached as Ex. 42 to Reply Declaration of John W. Griggs dated August 15, 2018 ("Griggs Reply Decl."), at 12 (excerpt from March 6, 2016 Memorandum issued by the Arbitration panel explaining reason for earlier dismissal of counterclaim against Richard Edelman).

[9] Griggs Decl. ¶ 25; Claimants' Motion to Dismiss the Counterclaim Against Claimant Trustee Howard Edelman, attached as Ex. 20 to Griggs Decl., at 3-4.

[10] Griggs Decl. ¶ 28; Order dated April 22, 2016, attached as part of Ex. 23 to Griggs Decl.

[11] Griggs Decl. ¶ 32.

[12] Griggs Decl. ¶ 32; Suggestion of Death Upon the Record, attached as Ex. 27 to Griggs Decl.

Howard Edelman, making arguments similar to those raised on the present motion.[13] Following responsive briefing, the arbitrators denied the motion on November 17, 2017.[14] Plaintiffs attempted to reargue the motion during a telephonic hearing on November 28, 2017, to no avail.[15]

On May 25, 2018, Plaintiffs made a formal motion in the Arbitration to substitute Robert Paul Edelman "in [his] representative capacity and not in [his] personal or individual capacity" as trustee in place of Howard Edelman.[16] The arbitrators granted the motion a few days later on May 29, 2018.[17]

On July 7, 2018, Plaintiffs filed a notice-motion in the Arbitration replacing Robert Paul Edelman with Danielle P. Barger, Esq., "in her representative capacity and not in her personal or individual capacity" as trustee of the Edelman Trust.[18] The parties agree that Howard Edelman, Robert Paul Edelman, and Danielle P. Barger were named as counterclaim-respondents in the Arbitration solely in their representative capacity as trustees of the Edelman Trust.[19]

---

[13] Griggs Decl. ¶ 35.

[14] Griggs Decl. ¶¶ 36-37.

[15] Griggs Decl. ¶ 38.

[16] Griggs Decl. ¶ 39; Motion to Substitute Successor Trustees, attached as Ex. 32 to Griggs Decl.

[17] Griggs Decl. ¶ 40; Order dated May 29, 2018, attached as Ex. 33 to Griggs Decl.

[18] Griggs Decl. ¶ 41; Notice of Substitution of Successor Trustee, attached as Ex. 34 to Griggs Decl. (the document is titled "Notice" but later refers to papers submitted in support of the "motion").

[19] Memorandum in Support of Motion to Stay Arbitration Counterclaim ("Pl. Mem.") at 1, 7; Def. Mem. at 12. As Plaintiffs concede, "It is black letter law that a trustee participating

4

The Arbitration hearings began on May 24, 2016, and took place over a period of more than two years. The last hearing session was held on August 8, 2018, and the Arbitration panel recently set a schedule for post-hearing briefs.[20] A month earlier, on July 9, 2018, Plaintiffs moved this Court to stay any further proceedings in the Arbitration Counterclaim. Plaintiffs argue that, because of the death of Howard Edelman, the arbitrators lack jurisdiction over the Counterclaim. According to Plaintiffs, Howard Edelman's death "temporarily deprived[ed] the arbitrators of jurisdiction" because the death of a party divests a court of jurisdiction until proper substitution of the party has been made.[21] Since the formal substitution of Robert Paul Edelman for Howard Edelman did not occur until May 2018, so the argument goes, the Arbitration panel was powerless to act during the interim period, and its November 17, 2017 Order denying dismissal of the Counterclaim was unlawful. Plaintiffs further argue that a defamation claim can only be asserted against an individual personally and that because Howard Edelman's successor trustees are named solely in their representative capacity, there can be no claim for defamation against them. The motion was fully briefed as of August 15, 2018.

Discussion

As a threshold issue, this Court must determine if it has jurisdiction to address the issue raised by Plaintiffs' motion. That issue is one of arbitrability: whether the death of Howard Edelman deprives the Arbitration panel of jurisdiction over arbitration of the

---

in litigation to represent a trust does so in his representative capacity and not in his or her personal or individual capacity." (Pl. Mem. at 7.)

[20] Pl. Mem. at 1; Def. Mem. at 4; Post Hearing Scheduling Order, attached as Ex. 41 to Griggs Reply Decl.

[21] Pl. Mem. at 6-7.

5

Counterclaim. The issue of arbitrability, however, is for the Arbitration panel to decide. This Court does not have jurisdiction to address that question.

The Arbitration is governed by the Federal Arbitration Act ("FAA"), which applies to transactions within the scope of Congress' power under the Commerce Clause of the United States Constitution. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). The transaction in dispute here involves a multi-state real estate investment trust listed on a national stock exchange, thus bringing it within the scope of the FAA. *See* 9 U.S.C. § 1 (defining "commerce"); *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 273-74 (1995) (FAA's application to transactions "involving commerce" is broad and the "functional equivalent of 'affecting'" commerce).

The FAA "establishes a 'federal policy favoring arbitration,'" which requires courts to "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (first quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983), then quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) ("[O]ur cases place it beyond dispute that the [FAA] was designed to promote arbitration."). Arbitration "is a matter of contract," *AT&T Mobility LLC*, 563 U.S. at 339 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)), and "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms,'" *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989)).

"Under the FAA, there is a general presumption that the issue of arbitrability should be resolved by the courts." *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)). In light of that presumption, "the issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Id.* (emphasis in original) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)).

The arbitration agreement governing the parties' dispute does precisely that; it demonstrates clearly and unmistakably that the parties intended questions of arbitrability to be decided by the Arbitration panel. The relevant governing language reads: "Any dispute arising out of or regarding this agreement or The Property shall be determined by arbitration in the City of New York, in accordance with the rules of the American Arbitration Association then in effect, and such decision shall be binding upon all of the parties."[22]

The arbitration provision expressly invokes and requires application of the AAA Rules. Rule 7(a) of the AAA Rules addresses the question of the extent to which the arbitrator may decides questions of arbitrability: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence,

---

[22] Participating Agreement dated January 1, 1962, attached as Ex. 2 to Affirmation of Thomas E.L. Dewey dated July 27, 2018, ¶ 12. The arbitration provision comes from the participation agreement governing Empire State Building Associates ("ESBA"), a 1962 partnership defining ownership in the Empire State Building. "The Property" refers to a partnership interest in ESBA. In the initial public offering transaction for Empire State Realty Trust, Plaintiffs exchanged their partnership interest in ESBA for securities in the Empire State Realty Trust. The parties do not dispute that the arbitration provision from the participation agreement is the operative contractual provision governing arbitrability.

7

scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures*, Rule 7(a) (amended and effective Oct. 1, 2013).

Taken together, the governing arbitration agreement and AAA Rule 7(a) place arbitrability of claims – including any counterclaim – squarely with the arbitrators, not the courts. In *Contec Corp.*, the Second Circuit was presented with a similar situation. The parties disputed whether the case, involving a related corporate entity that was not a signatory to the arbitration agreement, was subject to arbitration and whether it was for the court or arbitrators to make that determination. The court focused on the parties' broad arbitration provision and its express invocation of the AAA Rules. By calling for application of the AAA Rules, AAA Rule 7(a) necessarily governed the question of who determined arbitrability of a dispute. As the court explained, "We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp.* 398 F.3d at 208 (citing *Shaw Group Inc. v. Triplefine International Corp.*, 322 F.3d 115, 122 (2d Cir. 2003); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996)).

The same conclusion applies here: by calling for application of the AAA rules, the parties clearly and unmistakably intended to delegate issues of arbitrability to the arbitrators. What's more, Plaintiffs previously submitted to the Arbitration panel the same question presented here; that is, whether the death of Howard Edelman deprived the panel of jurisdiction over the Counterclaim. In doing so, Plaintiffs implicitly acknowledged that the question was properly placed before the arbitrators. *See Gvozdenovic v. United*

*Air Lines, Inc.*, 933 F.2d 1100, 1105-06 (2d Cir. 1991) (appellants were bound by arbitrator's ruling because they voluntarily and without objection participated in arbitration by, *inter alia*, arguing their case before an arbitrator); *Time Warner Cable of New York City LLC v. International Brotherhood of Electrical Workers*, 170 F. Supp. 3d 392, 411 (E.D.N.Y. 2016) ("A party's participation in the arbitration may waive rights or otherwise prevent it from contesting the jurisdiction of the arbitrator to hear a particular dispute."), *aff'd*, 684 F. App'x 68 (2d Cir. 2017).

Plaintiffs argue that "the jurisdictional issue has been re-presented at this late date with entirely new facts." (Pl. Mem. at 5.) The Court fails to see how that is so. Howard Edelman died on September 28, 2017. Plaintiffs subsequently notified the Arbitration panel that Robert Paul Edelman was named as successor trustee to Howard Edelman, and at the same time moved to dismiss the Counterclaim for lack of arbitrator jurisdiction. Plaintiffs made their motion at a time when there had been no order recognizing substitution of the successor trustee. Plaintiffs' present motion is based on the same scenario. The fact that Robert Paul Edelman since has been replaced as trustee by Danielle P. Barger is a new fact, but it is no different in kind. The question of whether Robert Paul Edelman's replacement as trustee now deprives the Arbitration panel of jurisdiction over the Counterclaim is a question for the arbitrators to answer.

Plaintiffs ask this Court to exercise its equitable powers to stay the Arbitration Counterclaim. (Pl. Mem. at 3.) But the equities do not favor Plaintiffs. Having informed the arbitrators that "the successor Trustee of the [Edelman Trust] is Robert Paul Edelman" on October 30, 2017, to now contend that the panel was powerless to act with respect to the Counterclaim because a formal substitution of trustee was not made until months later

9

elevates form over substance. Moreover, Plaintiffs continued to pursue their affirmative claims in the arbitration during that same period. Plaintiffs were no less interested in those claims, but Plaintiffs never claimed the arbitrators lacked the power to act over the Edelman Trust's claims prior to the formal substitution of its trustee.

In reply, Plaintiffs emphasize the seeming contradictory position taken by the Arbitration panel. The arbitrators dismissed the defamation counterclaim against Richard Edelman as not arbitrable because the alleged defamatory statements did not arise out of or concern the participation agreement or The Property. Yet the arbitrators declined to dismiss the defamation Counterclaim against Howard Edelman in his capacity as trustee even though that counterclaim is predicated on Richard Edelman's statements. As Plaintiffs put it, the arbitrators have acted outside their powers by failing to dismiss a counterclaim the substance of which they already found to be non-arbitrable.[23] The Court, however, has no basis, at this time or based on the present record, to conclude that there cannot be a legitimate reason for the arbitrators' having dismissed one counterclaim but not the other.

Moreover, Plaintiffs are not without means to further challenge the Counterclaim on the basis of non-arbitrability. Plaintiffs presumably will be able to brief the issue (again) in their post-hearing brief. And, in the event Plaintiffs ultimately lose the Counterclaim, they may have an opportunity to challenge the arbitrators' authority over the Counterclaim after issuance of the award. *See* 9 U.S.C. § 10(a)(4) (party to arbitration may seek to vacate award where, among other reasons, arbitrators exceeded their powers); (Pl. Mem.

---

[23] Plaintiffs' Reply Memorandum in Support of Motion to Stay Arbitration Counterclaim at 4-5.

at 3 ("[A] court's determination of the arbitrators' jurisdiction typically arises at the start of an arbitration proceeding, or at its conclusion following the entry of an award . . . .").) For now, however, the issue is for the arbitrators to determine.

The Court has considered Plaintiffs' remaining arguments and finds them to be without merit.[24] The Court also has considered all of Plaintiffs' cited authorities and finds them variously inapt, distinguishable, or unpersuasive. For example, Plaintiffs rely on a Supreme Court decision addressing applicability of state laws authorizing courts to stay arbitration to arbitrations governed by the FAA. *See Volt Information Sciences, Inc*, 489 U.S. at 477-78. But *Volt* involved an application of California law, not New York law. New York law, just like that of Second Circuit case law, provides that "[w]here parties agree that AAA rules will govern, questions concerning the scope and validity of the arbitration agreement, including issues of arbitrability, are reserved for the arbitrators." *Flintlock Construction Services, LLC v. Weiss*, 991 N.Y.S. 408, 410, 122 A.D.3d 51, 54 (1st Dep't 2014).

In sum, the issue of whether the Arbitration Counterclaim should be dismissed based on the death of Howard Edelman and ensuing events is for the arbitrators to decide. Accordingly, the Court need not and does not address the merits of that question.

---

[24] One of Plaintiffs' other arguments is that the Arbitration panel lacks jurisdiction over the successor trustees, Robert Paul Edelman and Danielle Barger, in their individual capacities. But the Counterclaim does not purport to be asserted against the Edelman Trust trustee in his or her individual capacity, and Plaintiffs expressly notified the panel that both Robert Paul Edelman and Danielle Barger were substituted as trustee solely in their representative capacity "and not in their personal or individual capacity." (Motion to Substitute Successor Trustees; Notice of Substitution of Successor Trustee.)

11

## Conclusion

For the foregoing reasons, Plaintiffs' motion to stay the Arbitration Counterclaim is DENIED.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: September 6, 2018
New York, New York

Copies transmitted to all counsel of record.